**FILED**
**JANUARY 22, 2008**
**MICHAEL W. DOBBINS**
**CLERK, U.S. DISTRICT COURT**

IN THE UNITED STATES DISTRICT COURT
FOR TH ENORTHRN DISTRICT OF ILLINOIS
EASTERN DIVISION

**08 C 465**

| | | |
|---|---|---|
| JAMES MUSIAL, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. |
| | ) | |
| CITIZENS BANK & TRUST COMPANY | ) | |
| OF CHICAGO, an Illinois banking | ) | Plaintiff demands trial by jury |
| corporation, | ) | |
| | ) | |
| Defendant. | ) | |

**JUDGE CASTILLO**
**MAGISTRATE JUDGE SCHENKIER**

## COMPLAINT

Plaintiff James E. Musial ("Musial"), through his attorneys, states the following as his Complaint against defendant Citizens Bank & Trust Company of Chicago ("CBT"):

### The Parties

1. Musial is a citizen and resident of the State of Illinois. Musial is an attorney licensed to practice law in the State of Illinois.

2. CBT is an Illinois Corporation with its principal place of business in Chicago, Illinois. CBT operates a banking institution under the name Citizens Bank & Trust of Chicago at 5700 N. Central Ave., Chicago, Illinois.

### Jurisdiction and Venue

3. This Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C §1331 and the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because defendant resides in this district and a substantial part of the events or omissions giving rise to plaintiff's claim occurred in this district.

5. In November of 2004, CBT hired Musial as in-house counsel to represent CBT, as well as other businesses owned or controlled by Robert Michael and George Michael, majority owners and directors of CBT. Among other duties, Musial was assigned multiple pending litigation matters involving CBT, its principals and its principals other businesses. Due to the litigious nature of CBT's principals, George and Robert Michael ("the Michaels"), Musial's case load quickly grew to well over 100 cases.

6. Although promised certain support at the time of his hire, and despite having a case load that that grew substantially, CBT never provided Musial with the support he required to perform in his position. CBT, for example, never provided Musial with a secretary and, in addition to his other duties, Musial was required to perform all of his own administrative and clerical work.

7. During his employment at CBT, Musial suffered from a condition known as severe anxiety disorder, accompanied by stress disorder, severe depression and sleep disorder. As a result of Musial's condition, during several periods of time during and after his employment, he was substantially limited in one or more of his major life activities. Musial suffered from panic attacks that caused him to be incapable, without reasonable accommodation, to function. The triggers of his panic attacks primarily included work-related stress and overwork that persists for a period of time. Musial advised the Michaels of his condition several times during his employment, and further advised them that he was receiving treatment in the form of medication and therapy.

8. In or about September of 2005, despite his best efforts, Musial's condition worsened. Musial specifically advised the Michaels in September of 2005 about his disability. In December of 2005, Musial suffered a nervous breakdown and was

hospitalized and treated for his severe anxiety disorder and depression, was admitted to the Cardiac Ward of Central Du Page Hospital and was placed on suicide watch. On December 26, 2005, following his release from the hospital, Musial had his annual review with the Michaels and Citizen's Bank. Musial explained to them that the stress and anxiety disorder previously known to them had increased, that he had a nervous breakdown and that he required reasonable accommodation in order to carry on the essential duties of his position. Musial further explained the events leading up to the hospitalization. At the annual review, Musial asked for help in the form of an administrative assistant or staff to assist him with his ever-increasing workload, which added to his ever-increasing stress. The Michaels refused. Instead, Musial was taken to task for the time he required in the hospital.

9. Rather than providing Musial with reasonable accommodation, the Michaels made Musial's employment situation even worse. For example, instead of providing Musial with reasonable accommodation, the Michaels and CBT actually increased his workload, repeatedly took him to task and forced him to perform additional tasks designed to make it even more difficult to for Musial to perform his functions as an attorney.

10. Because conditions at CBT had not improved, and in fact had gotten progressively worse, in February of 2006 Musial again experienced a relapse. During his discussions with Michael A. Speziale, CBT's then-President, concerning the unreasonable workload and the bank's failure to accommodate his need to be provided some reasonable assistance or provide a reasonable period of leave in order to seek treatment, Speziale said to Musial "don't you have a nervous breakdown on me." Again, despite CBT's

3

knowledge of Musial's condition and his request for reasonable accommodation, CBT refused to provide him with any assistance, including any time off from work.

11. On or about February 27, 2006, as a result of CBT's failure to accommodate him, Musial was unable to come to work. He missed the next few days because he was unable to function and again sought treatment for his mental condition.

12. On March 8, 2006, citing Musial's absence from work without approval, CBT, through Speziale, terminated Musial's employment.

13. In CBT's March 8, 2006 termination letter, Musial was permitted the opportunity to respond in writing as to any extenuating circumstances that caused his absence. Musial responded in writing on March 15, 2006. In his March 15 correspondence, Musial described the debilitating mental state he had been placed under as the reason for his brief absence from work and further reminded Speziale of his and Michaels' knowledge of the same. CBT failed to reconsider its decision to terminate Musial.

13. Following his discharge, on or about July 24, 2006, Musial filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 440-2006-08866 ("the Charge"). The Charge alleged that CBT violated the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

14. After investigating the Charge, on February 9, 2007, the EEOC determined "that the evidence obtained in the investigation establishe[d] reasonable cause to believe that [CBT] has a leave policy that denies a reasonable accommodation for a class of disabled employees, in violation o the ADA." The EEOC invited the parties to

4

attempt to conciliate the dispute. A true and correct copy of the EEOC's February 9 Determination is attached hereto as Exhibit A.

15. Rather than attempt to conciliate the parties' dispute, on March 8, 2007, within days of the EEOC's Determination, but exactly one-year after Musial was fired, the Michaels and CBT filed a lawsuit in the Circuit Court of Cook County against Musial entitled <u>Citizens Bank & Trust Company, et al v. Musial</u>, No. 07 L 2482, accusing Musial of legal malpractice during the period of time that he suffered from, and the Michaels were aware of, his mental condition. In addition, the Michaels filed several complaints against Musial with the Attorney Registration Disciplinary Commission. Suffice it to say, the EEOC's conciliation efforts were unsuccessful.

16. As a result, on October 23, 2007, the EEOC issued Musial a Right to Sue Letter. A true and correct copy of the letter is attached hereto as Exhibit B.

17. CBT's conduct directed to Musial was in violation of the Americans with Disabilities Act, 42 U.S.C. §12101. Musial is a qualified individual with a disability and was discriminated against in his employment by CBT.

18. As a direct and proximate result of CBT's violation of the ADA, Musial has been damaged.

WHEREFORE, Musial prays that the Court award him damages, including compensatory and punitive damages, against defendant in an amount to be determined at trial, in addition to costs and attorneys' fees incurred in bringing this action, plus additional relief as the Court may deem just and proper.

**JAMES E. MUSIAL**

By: /s/ Howard L. Teplinsky
 One of His Attorneys

Howard L. Teplinsky – 6197501
Ottenheimer Teplinsky Rosenbloom, LLC
750 Lake Cook Rd., Suite 140
Buffalo Grove, IL 60089
(847) 520-9400

6