IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTER DIVISION

| | |
|---|---|
| JAMES E. MUSIAL,<br><br>        Plaintiff,<br><br>        v.<br><br>CITIZENS BANK & TRUST COMPANY OF CHICAGO, an Illinois banking corporation,<br><br>        Defendant. | )<br>)<br>)<br>)  **No. 08 C 465**<br>)<br>)  Judge Castillo<br>)  Magistrate Judge Schenkier<br>)<br>)<br>) |

**ANSWER TO COMPLAINT, AFFIRMATIVE DEFENSES
AND JURY DEMAND**

CITIZENS BANK & TRUST COMPANY OF CHICAGO ("CBT") for its answer to the complaint of Plaintiff James E. Musial ("Musial"), states as follows:

**The Parties**

1. Musial is a citizen and resident of the State of Illinois. Musial is an attorney licensed to practice law in the State of Illinois.

   **ANSWER:** CBT admits the allegations of paragraph 1.

2. CBT is an Illinois Corporation with its principal place of business in Chicago, Illinois. CBT operates a banking institution under the name Citizens Bank & Trust of Chicago at 5700 N. Central Ave., Chicago, Illinois.

   **ANSWER**: CBT admits the allegations of paragraph 2.

**Jurisdiction and Venue**

3. This Court has jurisdiction over plaintiff's claim pursuant to 28 U.S.C §1331 and the Americans with Disabilities Act, 42 U.S.C. §12101 et seq.

   **ANSWER**: CBT admits the allegations of paragraph 3.

4. Venue is proper in this district pursuant to 28 U.S.C. §1391(b) because defendant resides in this district and a substantial part of the events or omissions giving rise to plaintiff's claim occurred in this district.

   **ANSWER**: CBT admits the allegations of paragraph 4.

5. In November of 2004, CBT hired Musial as in-house counsel to represent CBT, as well as other businesses owned or controlled by Robert Michael and George Michael, majority owners and directors of CBT. Among other duties, Musial was assigned multiple pending litigation matters involving CBT, its principals and its principals other businesses. Due to the litigious nature of CBT's principals, George and Robert Michael ("the Michaels"), Musial's case load quickly grew to well over 100 cases.

**ANSWER**: CBT admits that Musial was hired as in-house counsel in 2004 to represent CBT and other entities. CBT admits that litigation files then being handled by other counsel were, over a period of time transitioned to Musial to handle in-house. CBT denies the remaining allegations of paragraph 5.

6. Although promised certain support at the time of his hire, and despite having a case load that that grew substantially, CBT never provided Musial with the support he required to perform in his position. CBT, for example, never provided Musial with a secretary and, in addition to his other duties, Musial was required to perform all of his own administrative and clerical work.

**ANSWER**: CBT denies the allegations of paragraph 6.

7. During his employment at CBT, Musial suffered from a condition known as severe anxiety disorder, accompanied by stress disorder, severe depression and sleep disorder. As a result of Musial's condition, during several periods of time during and after his employment, he was substantially limited in one or more of his major life activities. Musial suffered from panic attacks that caused him to be incapable, without reasonable accommodation, to function. The triggers of his panic attacks primarily included work-related stress and overwork that persists for a period of time. Musial advised the Michaels of his condition several times during his employment, and further advised them that he was receiving treatment in the form of medication and therapy.

**ANSWER**: CBT has insufficient knowledge with which to form a belief as to the truth of the allegations related to Musial's suffering from sever anxiety disorder. CBT denies that Musial was substantially limited in one or more major life activities or that he was a "qualified person" as that term is used in connection with the Americans with Disabilities Act. CBT denies that Musial advised the Michaels of his alleged condition several times during his employment.

10359                                                                2

8.     In or about September of 2005, despite his best efforts, Musial's condition worsened. Musial specifically advised the Michaels in September of 2005 about his disability. In December of 2005, Musial suffered a nervous breakdown and was hospitalized and treated for his severe anxiety disorder and depression, was admitted to the Cardiac Ward of Central Du Page Hospital and was placed on suicide watch. On December 26, 2005, following his release from the hospital, Musial had his annual review with the Michaels and Citizen's Bank. Musial explained to them that the stress and anxiety disorder previously known to them had increased, that he had a nervous breakdown and that he required reasonable accommodation in order to carry on the essential duties of his position. Musial further explained the events leading up to the hospitalization. At the annual review, Musial asked for help in the form of an administrative assistant or staff to assist him with his ever-increasing workload, which added to his ever-increasing stress. The Michaels refused. Instead, Musial was taken to task for the time he required in the hospital.

**ANSWER**:   CBT denies that Musial advised the Michaels in September 2005 of any alleged disability.  CBT has no knowledge or information with which to admit or deny that Musial suffered a nervous breakdown, was admitted to the hospital or placed on suicide watch.  CBT further states that the statement in paragraph 8 characterizing Mr. Musial's condition in December 2005 as a nervous breakdown is being made for the first time in this proceeding.  Mr. Musial did not contend that he had suffered a nervous breakdown in his EEOC complaint or in the answer he filed to CBT's state court action for legal malpractice.  CBT admits that Musial requested that CBT hire an assistant or staff to aid him in carrying out his assigned duties.  CBT, as a result of such request, hired Adam Loops, an associate attorney to work with Mr. Musial and under his direction.  CBT denies the remaining allegations of paragraph 8.

9.     Rather than providing Musial with reasonable accommodation, the Michaels made Musial's employment situation even worse. For example, instead of providing Musial with reasonable accommodation, the Michaels and CBT actually increased his workload, repeatedly took him to task and forced him to perform additional tasks designed to make it even more difficult to for Musial to perform his functions as an attorney.

**ANSWER**:   CBT denies the allegations of paragraph 9.

10.    Because conditions at CBT had not improved, and in fact had gotten progressively worse, in February of 2006 Musial again experienced a relapse.

10359                                                    3

>During his discussions with Michael A. Speziale, CBT's then-President, concerning the unreasonable workload and the bank's failure to accommodate his need to be provided some reasonable assistance or provide a reasonable period of leave in order to seek treatment, Speziale said to Musial "don't you have a nervous breakdown on me." Again, despite CBT's knowledge of Musial's condition and his request for reasonable accommodation, CBT refused to provide him with any assistance, including any time off from work.

**ANSWER**: CBT denies the allegations of paragraph 10.

11.  On or about February 27, 2006, as a result of CBT's failure to accommodate him, Musial was unable to come to work. He missed the next few days because he was unable to function and again sought treatment for his mental condition.

**ANSWER**: CBT admits that Musial failed to report to work on and after February 27, 2006 without notice and failed to attend scheduled court matters without notice to CBT or to his associate attorney Adam Loops.  CBT denies the remaining allegations of paragraph 11.

12.  On March 8, 2006, citing Musial's absence from work without approval, CBT, through Speziale, terminated Musial's employment.

**ANSWER**: CBT admits that written notice was sent to Musial on March 8, 2006 noting that he had abandoned his position as a result of his unexcused and unannounced absence from and after February 27, 2006 and that his employment at CBT was deemed ended as of that date.

13.  In CBT's March 8, 2006 termination letter, Musial was permitted the opportunity to respond in writing as to any extenuating circumstances that caused his absence. Musial responded in writing on March 15, 2006. In his March 15 correspondence, Musial described the debilitating mental state he had been placed under as the reason for his brief absence from work and further reminded Speziale of his and Michaels' knowledge of the same. CBT failed to reconsider its decision to terminate Musial.

**ANSWER**: CBT admits that Musial sent a letter to CBT dated March 15, 2006, which speaks for itself.  CBT denies all allegations of the first paragraph 13 inconsistent with the letter.

13.(sic)  Following his discharge, on or about July 24, 2006, Musial filed a Charge of Discrimination with the Equal Employment Opportunity Commission, Charge No. 440-2006-08866 ("the Charge"). The Charge alleged that CBT violated the Americans with Disabilities Act, 42 U.S.C. § 12101 et seq.

10359                                           4

 **ANSWER**: CBT admits the allegations of the second paragraph 13.

14. After investigating the Charge, on February 9, 2007, the EEOC determined "that the evidence obtained in the investigation establishe[d] reasonable cause to believe that [CBT] has a leave policy that denies a reasonable accommodation for a class of disabled employees, in violation of the ADA." The EEOC invited the parties to attempt to conciliate the dispute. A true and correct copy of the EEOC's February 9 Determination is attached hereto as Exhibit A.

 **ANSWER**: CBT admits that on February 9, 2007 the EEOC issued a Determination, a copy of which is attached to the Complaint as Exhibit A. The document speaks for itself.

15. Rather than attempt to conciliate the parties' dispute, on March 8, 2007, within days of the EEOC's Determination, but exactly one-year after Musial was fired, the Michaels and CBT filed a lawsuit in the Circuit Court of Cook County against Musial entitled <u>Citizens Bank & Trust Company, et al v. Musial,</u> No. 07 L 2482, accusing Musial of legal malpractice during the period of time that he suffered from, and the Michaels were aware of, his mental condition. In addition, the Michaels filed several complaints against Musial with the Attorney Registration Disciplinary Commission. Suffice it to say, the EEOC's conciliation efforts were unsuccessful.

 **ANSWER**: CBT admits that it filed a malpractice suit against Musial and gave notice to the ARDC related to the gross negligence of Mr. Musial and other related violations of the Illinois Rules Code of Professional Conduct.

16. As a result, on October 23, 2007, the EEOC issued Musial a Right to Sue Letter. A true and correct copy of the letter is attached hereto as Exhibit B.

 **ANSWER**: CBT admits the allegations of paragraph 16.

17. CBT's conduct directed to Musial was in violation of the Americans with Disabilities Act, 42 D.S.C. §12101. Musial is a qualified individual with a disability and was discriminated against in his employment by CBT.

 **ANSWER**: CBT denies the allegations of paragraph 17.

18. As a direct and proximate result of CBT's violation of the ADA, Musial has been damaged.

 **ANSWER**: CBT denies the allegations of paragraph 18.

## AFFIRMATIVE DEFENSES

For its affirmative defenses, Defendant, CBT, states the following, but does not concede that each of the matters covered by the numbered defenses is to be proved by CBT; CBT reserves its position that Musial has the burden of proof as to all matters necessary to state the claims asserted in his complaint and to establish his damage.

### FIRST AFFIRMATIVE DEFENSE

CBT had legitimate non-discriminatory and non-retaliatory reasons for its employment decisions, including, but not limited to that Musial's unexcused and extended absence from work was contrary to the attendance policies maintained by CBT.

### SECOND AFFIRMATIVE DEFENSE

CBT had no knowledge or notice of the alleged disability of Musial. Musial failed, at all times, to give notice to CBT of his alleged disability and failed to request or otherwise seek reasonable accommodations for the same.

### THIRD AFFIRMATIVE DEFENSE

To the extent that Musial's claim is based upon occurrences more than 3000 days before he filed a charge of discrimination it is time barred.

### FOURTH AFFIRMATIVE DEFENSE

Musial did not mitigate his alleged damages and seek gainful employment at a comparable wage in a time manner or with diligence, and his damages, if any, should be reduced accordingly.

### FIFTH AFFIRMATIVE DEFENSE

At all relevant times, CBT followed a policy of non-discrimination and non-retaliation, and made a good faith effort to comply with all federal, state and local laws prohibiting employment discrimination.

WHEREFORE, CBT denies that Musial is entitled to any relief whatsoever and requests that the Court dismiss the Complaint, in its entirety, with prejudice, and that judgment be entered in favor of CBT, with an award of costs of suit.

### JURY DEMAND

Defendant, Citizens Bank & Trust Company of Chicago requests a trial by jury.

**CITIZENS BANK & TRUST COMPANY OF CHICAGO**

By: s/ Lawrence M. Karlin
One of Defendant's Attorneys

Warren Lupel, Esq. ARDC #01708872
Lawrence Karlin, ARDC# 3125137
Lupel Weininger LLP
30 N. LaSalle Street
Suite 3520
Chicago, Illinois 60602
312-260-7700